UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILMAN COLLANDO-PENA,

        Petitioner,

v.                                  Case No. 3:16-cv-1109-J-34PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

### I. Status

Petitioner Wilman Collando-Pena, an inmate of the Florida penal system, initiated this action on August 25, 2016,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1) in the Northern District of Florida. On August 30, 2016, the Northern District of Florida transferred the Petition to this Court. Doc. 4. In the Petition, Collando-Pena challenges a 2013 state court (Duval County, Florida) judgment of conviction for attempted first-degree murder and armed burglary. Collando-Pena raises nine grounds for relief. See Petition at 3-22.[2] Respondents have submitted a memorandum in opposition to the Petition. See Answer to Petition for Writ of Habeas Corpus (Response; Doc. 18) with exhibits (Resp. Ex.). Collando-Pena elected not to submit a brief in reply. Doc. 20. This case is ripe for review.

_____

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

## II. Relevant Procedural History

On October 29, 2012, the State of Florida (State) charged Collando-Pena by way of an amended Information with attempted first-degree murder (count one) and armed burglary (count two). Resp. Ex. 1 at 31-32. Collando-Pena proceeded to a jury trial, at the conclusion of which the jury found him guilty as charged as to each count. Id. at 43-46. The jury also found that Collando-Pena actually possessed a firearm during the commission of both offenses and that the structure he was found guilty of burglarizing as to count two was a dwelling. Id. On June 18, 2013, the circuit court sentenced Collando-Pena to a term of incarceration of forty years in prison with a ten-year minimum mandatory as to each count. Id. at 84-90. The circuit court ordered the sentences to run concurrently. Id.

Collando-Pena appealed the judgment of conviction and sentences to Florida's First District Court of Appeal (First DCA). Id. at 96. Collando-Pena's appellate counsel filed an Anders[3] brief. Resp. Ex. 6. Several months later, appellate counsel filed a motion to correct sentencing error pursuant to Florida Rule of Criminal Procedure 3.800(b)(2) (Rule 3.800(b)(2) Motion) in the circuit court, in which he alleged the circuit court erred in imposing court costs and a public defender's lien. Resp. Ex. 5 at 1-6. The circuit court dismissed the Rule 3.800(b)(2) Motion as untimely due to the fact it was filed after the initial brief, in contravention of Rule 3.800(b)(2). Id. at 11-12. Collando-Pena did not file a pro se initial brief. Resp. Ex. 12. The First DCA ultimately affirmed the conviction and sentence on June 3, 2014, with a written opinion explaining why the Rule 3.800(b)(2) Motion did not preserve any errors on appeal. Id. On June 13, 2014, Collando-Pena,

---

[3] Anders v. State of California, 386 U.S. 738 (1967).

through counsel, filed a motion for rehearing, which the First DCA denied on July 9, 2014. Resp. Ex. 13. The First DCA issued the Mandate on July 25, 2014. Resp. Ex. 12.

On January 20, 2015, Collando-Pena filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion). Resp. Ex. 14 at 1-28. Collando-Pena raised the following ten grounds for relief in his Rule 3.850 Motion: counsel inadequately argued a motion for judgment of acquittal (ground one); counsel failed to object to confusing and incorrect jury instructions (ground two); counsel failed to call a witness (ground three); counsel failed to introduce Collando-Pena's cellphone records at trial (ground four); counsel failed to call two witnesses (ground five); counsel failed to call a witness (ground six); counsel failed to object to Williams[4] rule evidence (ground seven); counsel failed to object to the State and circuit court's statements that both offenses were punishable between forty years and life in prison (ground eight); counsel mislead Collando-Pena regarding the need for him to testify at trial (ground nine); and the cumulative effect of counsel's errors prejudiced him (ground ten). Id. On December 17, 2015, the circuit court denied the Rule 3.850 Motion. Id. at 29-42. On May 20, 2016, the First DCA per curiam affirmed the circuit court's denial of Collando-Pena's Rule 3.850 Motion without a written opinion and issued the Mandate on June 15, 2016. Resp. Ex. 17.

### III. One-Year Limitations Period

The Petition was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

---

[4] Williams v. State, 110 So. 2d 654 (Fla. 1959).

## IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Collando-Pena's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court

decisions is "'greatly circumscribed' and 'highly deferential.'" <u>Id.</u> (quoting <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. <u>See Marshall v. Sec'y, Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. <u>See Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court recently stated:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

<u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. <u>Id.</u> at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[5] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298

(2017). Also, deferential review under § 2254(d) generally is limited to the record that was

---

[5] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

### B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the """opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[6] supra, at 747–748, 111 S. Ct. 2546; Sykes,[7] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring

---

[6] Coleman v. Thompson, 501 U.S. 722 (1991).
[7] Wainwright v. Sykes, 433 U.S. 72 (1977).

> procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[8] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."

---

[8] Murray v. Carrier, 477 U.S. 478 (1986).

> Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception
> is exceedingly narrow in scope," however, and requires proof
> of actual innocence, not just legal innocence. Johnson v.
> Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more

likely than not that no reasonable juror would have convicted him' of the underlying

offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v.

Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual

innocence must be based on reliable evidence not presented at trial." Calderon v.

Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity

of such evidence, in most cases, allegations of actual innocence are ultimately summarily

rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of

counsel. That right is denied when a defense attorney's performance falls below an

objective standard of reasonableness and thereby prejudices the defense." Yarborough

v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521

(2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a
> conviction must show that "counsel's representation fell below
> an objective standard of reasonableness." [Strickland,] 466
> U.S. at 688, 104 S. Ct. 2052. A court considering a claim of
> ineffective assistance must apply a "strong presumption" that
> counsel's representation was within the "wide range" of
> reasonable professional assistance. Id., at 689, 104 S. Ct.
> 2052. The challenger's burden is to show "that counsel made
> errors so serious that counsel was not functioning as the
> 'counsel' guaranteed the defendant by the Sixth Amendment."
> Id., at 687, 104 S. Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u>, at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable

> argument that counsel satisfied <u>Strickland</u>'s deferential
> standard," then a federal court may not disturb a state-court
> decision denying the claim. <u>Richter</u>, - U.S. at -, 131 S. Ct. at
> 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

Collando-Pena alleges that his trial counsel was ineffective because he failed to adequately argue a motion for judgment of acquittal. Petition at 3-4. Specifically, he contends that counsel should have argued that the State failed to prove the "remaining in" element of burglary. <u>Id.</u> According to Collando-Pena, counsel's failure to adequately argue this point "undermined the outcome of this case, and permitted the jury to deliberate over an offense not proven, thereby lessening the State's burden of proof, and permitting Petitioner to be found guilty of an offense not proven." <u>Id.</u> at 4.

Collando-Pena raised a similar claim in his Rule 3.850 Motion. Resp. Ex. 14 at 6-8. The circuit court denied relief on this claim, stating in pertinent part:

> Burglary can be proven in two ways: (1) the
> unauthorized entry into a structure with the intent to commit
> an offense therein; or (2) notwithstanding an invited entry,
> remaining in the structure: (a) surreptitiously, with the intent
> to commit an offense; (b) after permission to remain has been

withdrawn, with the intent to commit an offense; or (c) to commit or attempt to commit a forcible felony. § 810.02(1)(b)1, 2a-c, Fla. Stat. (2011).

Here, the Information specifically charged Defendant as followed: "WILMAN RAMON COLLANDO PENA on October 31, 2011, . . . **did unlawfully enter or** remain in a structure or conveyance . . . with the intent to commit an offense therein, and . . . became armed with explosives or a dangerous weapon . . . ." In his own Motion, Defendant admits he entered without consent. As such, even if counsel argued the State failed to prove Defendant was an invitee, but "remained therein," the State still presented prima facie evidence Defendant committed a Burglary as he made an unauthorized entry. This Court finds Defendant is arguing semantics when the Information is perfectly clear. Accordingly, Ground One is denied.

Id. at 30-31 (record citations omitted and emphasis in original). The First DCA per curiam affirmed the circuit court's denial. Resp. Ex. 17.

To the extent that the First DCA decided the claim on the merits,[9] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Collando-Pena is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of the claim is not entitled to deference, Collando-Pena's claim in Ground One is without merit. In reviewing

---

[9] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

a motion for judgment of acquittal, trial courts must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Gudinas v. State, 693 So. 2d 953, 962 (Fla. 1997) (quoting Taylor v. State, 583 So. 2d 323, 328 (Fla. 1991) (holding a motion for judgment of acquittal should not be granted unless "there is no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law.").

Under Florida law, burglary of a dwelling occurs where:

> 1. Entering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter; or
>
> 2. Notwithstanding a licensed or invited entry, remaining in a dwelling, structure, or conveyance:
>
>> a. Surreptitiously, with the intent to commit an offense therein;
>>
>> b. After permission to remain therein has been withdrawn, with the intent to commit an offense therein; or
>>
>> c. To commit or attempt to commit a forcible felony, as defined in s. 776.08.

§ 810.02(1)(b), Fla. Stat. (2011) (emphasis added).

The record reflects that the State charged Collando-Pena with both methods of committing a burglary. Resp. Ex. 1 at 31. At trial, the State introduced unrebutted evidence that on the night of October 31, 2011, Collando-Pena knocked on the apartment door of Sabrina Hoffer and Lindsay Rossman, who had a guest over that night, Ashley Sleeper. Resp. Ex. 3 at 240-42, 296-98, 333. Assuming it was a trick or treater, Hoffer

opened the door; however, once unlocked Collando-Pena forcefully pushed the door open and pointed a handgun within inches of Rossman's face. Id. at 242-43, 298, 304, 333-36. Collando-Pena pulled the trigger, but it jammed. Id. at 244, 299-300, 333-36. He attempted to fix the firearm, but the women pushed him out of the apartment and then called police. Id. at 298-306, 337. Notably, both Hoffer and Rossman testified Collando-Pena was not invited into their apartment. Id. at 242, 304. The State also introduced evidence from a jail-house informant, Hector Sanchez-Andujar, who testified that Collando-Pena confessed to him. Id. at 349-53. Additionally, another jail inmate also testified that once Collando-Pena discovered Sanchez-Andujar would become a witness in his case, Collando-Pena attacked and threatened to kill him, calling him a "snitch." Id. at 367-70. At the close of the State's evidence, defense counsel moved for a judgment of acquittal. Id. at 376-81. Regarding the burglary count, counsel argued that the State failed to prove Collando-Pena entered the dwelling without permission or that he remained in the structure when the victims pushed him out. Id. at 377. The circuit court denied the motion for judgment of acquittal. Id. at 381.

Based on this record, Collando-Pena cannot demonstrate deficient performance because counsel did in fact make the argument Collando-Pena now complains counsel failed to make. Defense counsel argued the State failed to prove he remained in the apartment. Id. at 377. As such, the record refutes his claim of deficient performance. Likewise, Collando-Pena cannot demonstrate prejudice because there was unrebutted evidence to support the unlawful entry method of burglary. Id. at 242-43, 298, 304, 333-36, 351-53. After viewing the evidence in the light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that Collando-Pena unlawfully

entered the apartment with the intent to commit a crime therein. <u>See</u> <u>Jackson</u>, 443 U.S. at 319. Accordingly, the case would have still gone to the jury and there is no reasonable probability the outcome of the trial would have been different. In light of Collando-Pena's failure to demonstrate deficient performance or prejudice, relief on his claim in Ground One is due to be denied.

## B. Ground Two

In Ground Two, Collando-Pena avers that his trial counsel was ineffective because she failed to object to misleading, confusing, and incorrect jury instructions for the burglary offense. Petition at 4-7. Collando-Pena asserts that counsel should have objected to the portion of the burglary instruction regarding the "remaining in" element. <u>Id.</u> at 6-7. According to Collando-Pena, the State only provided evidence of a forced entry, not an invitee remaining in the dwelling after consent had been revoked. <u>Id.</u> But for this alleged error, Collando-Pena maintains that there is a reasonable probability that the jury would have acquitted him. <u>Id.</u> at 7.

Collando-Pena raised this claim as ground two of his Rule 3.850 Motion. Resp. Ex. 14 at 8-12. In denying relief, the circuit court explained:

> During the jury charge conference, defense counsel requested this Court to read only one theory of Burglary, stating the elements of the two theories were "not compatible." This Court considered counsel's argument, but rejected such, stating "I believe there's sufficient evidence to support both theories. I'm inclined to read both." Thus, counsel cannot be deficient for making the argument Defendant contends she did not make, which was ultimately rejected by this Court.
>
> As explained *supra*, the Information charged Defendant under both theories of Burglary: unlawful entry with intent to commit an offense therein and, notwithstanding consent, remaining in [the] structure with the intent to commit an offense therein. As such, this Court followed Standard Jury

Instruction 13.1 and instructed the jury on both theories of Burglary, including each applicable element. As to Defendant's argument regarding the "stealth instruction," this Court finds Defendant has failed to show he was prejudiced by such instruction. Based on the evidence adduced at trial, it was not necessary for the State to prove Defendant's entry into the victims' home was stealthy as the State could prove Burglary by an entry without consent of the owner. See Daughtry v. State, 804 So. 2d 426, 427 (Fla. 4th DCA 2001). Sabrin[a] Hoffer (Ms. Hoffer), one of the residents at the subject apartment, testified she heard a knock at the door. Since it was Halloween, Ms. Hoffer assumed it was trick-or-treaters. Ms. Hoffer stated she opened the door and Defendant pushed through and pulled out a gun. Ms. Hoffer testified she did not invite Defendant inside. Accordingly, Defendant cannot show that but for this instruction, the outcome of the case would have been different.

As to any claim that counsel was ineffective for failing to preserve this issue for appeal, "failure to preserve issues for appeal does not show the necessary prejudice under Strickland." Strobridge v. State, 1 So. 3d 1240, 1242 (Fla. 4th DCA 2009). In Strobridge, the appellate court found "the only prejudice asserted was prejudice in the [defense attorney's] failure to preserve the issue for appeal and not any prejudice occurring at the trial itself." Id. at 1243; see Carattelli v. State, 961 So. 2d 312, 323 (Fla. 2007) (holding that a defendant must demonstrate prejudice at trial, not on appeal). The "ultimate focus of inquiry must be on the fundamental fairness of the proceeding *whose result is being challenged*." Strickland, 466 U.S. at 670 (emphasis added). Therefore, Ground Two is denied.

Id. at 31-32 (record citations omitted). The First DCA per curiam affirmed the circuit court's denial. Resp. Ex. 17.

To the extent that the First DCA decided the claim on the merits,[10] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court

---

[10] In accordance with Wilson, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. Wilson, 138 S. Ct. at 1194.

concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Collando-Pena is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of the claim is not entitled to deference, the claim in Ground Two is meritless because he cannot demonstrate prejudice. The record reflects that after a long discussion with the parties, the circuit court decided to instruct the jury on both theories of burglary. Resp. Exs. 3 at 393-400; 4 at 404. The defense originally objected, arguing the two theories were incompatible and that the State needed to choose one or the other. Resp. Ex. 3 at 393-94. The circuit court noted that "[t]hey're two alternate theories and they can prove it either way." Id. at 394. The State went on to argue that there was no evidence of consent so the "remaining in" instruction was not needed. Id. at 395. However, the circuit court and defense attorney noted the victims opened the door for Collando-Pena without asking who it was and that there was evidence to suggest an inference that Collando-Pena could enter the apartment that day. Id. at 396. Based on this evidence, the circuit court stated, "I believe there's sufficient evidence to support both theories. I'm inclined to read both." Id. The circuit court was inclined to read both "because I think that there is a basis to infer some of these things and I want to make sure that I've given an instruction that will cover those so it doesn't come back to haunt me on appeal." Id. at 399. Notably, defense counsel ultimately agreed with the Court about reading both possible burglary theories to the jury. Id. at 400.

Based on this record, the circuit court would not have agreed to strike the "remaining in" theory of burglary because it felt an inference could be drawn from the evidence presented that the victims consented to Collando-Pena's entrance into their apartment. Thus, any objection to the reading of this jury instruction would have been meritless. Counsel cannot be found ineffective for failing to raise a meritless objection. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless argument); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). Additionally, because there was evidence that supported the theory of burglary regarding Collando-Pena's uninvited status, Collando-Pena can likewise not demonstrate prejudice. As noted above, Collando-Pena barged into the apartment and tried to shoot Rossman, thereby establishing the elements of burglary. Accordingly, even if the jury had not been instructed on the "remaining in" theory of burglary, the jury would have still convicted him on the alternate theory of burglary. For the foregoing reasons, Collando-Pena is not entitled to the relief he seeks in Ground Two.

## C. Ground Three

In Ground Three, Collando-Pena contends that his counsel was ineffective because she failed to investigate and obtain his probation officer, Michael Everle, as a witness and to obtain Collando-Pena's cellphone records. Petition at 8-10. Collando-Pena claims that Everle was available to testify and that he would have stated that he was with Collando-Pena the morning after the incident, did not find anything inappropriate, and that he overheard a phone conversation between Collando-Pena and the victim during which

the victim stated she was going to file a false police report as revenge for Collando-Pena cheating on her. Id. at 8. Collando-Pena further asserts that his counsel should have obtained the cellphone records to corroborate the fact that the victim called him the morning after the incident. Id. Noting the hearsay nature of this testimony, Collando-Pena contends that it would be admissible as an exception to the hearsay rule because it demonstrates motive for the victim to fabricate the charged offenses. Id. at 9.

In his Rule 3.850 Motion, Collando-Pena raised a similar claim. Resp. Ex. 14 at 12-14. The circuit court denied relief on the claim, explaining:

> This Court finds testimony from Officer Everle as to any alleged statements made by the victim would be inadmissible hearsay. See § 90.801, Fla. Stat. (2011). Here, Defendant alleges Officer Everle would have testified to statements made by Ms. Rossman to support a defense that Ms. Rossman fabricated the entire incident. Thus, Officer Everle would have testified to out-of-court statements offered for the truth of the matter asserted. Such testimony is inadmissible hearsay and would have been excluded during trial. Accordingly, counsel cannot be ineffective for failing to call a witness whose testimony would have been inadmissible.
>
> As to Defendant's cell phone records, this Court finds Defendant has failed to prove he was prejudiced by such omission. Ms. Hoffer, Ms. Rossman, and Ashley Sleeper (Ms. Sleeper) testified Defendant burst through Ms. Hoffer and Ms. Rossman's front door, uninvited, and pointed a gun at Ms. Rossman's head. Immediately after this incident occurred, Ms. Rossman called 911. The 911 call was played to the jury. Considering three eyewitness[es] to the incident testified Defendant burst into Ms. Hoffer and Ms. Rossman's apartment uninvited, Defendant cannot show that but for counsel's omission, the outcome of the case would have been different. Accordingly, Ground Three is denied.

Id. at 32-34 (record citations omitted). The First DCA per curiam affirmed the circuit court's denial. Resp. Ex. 17.

To the extent that the First DCA decided the claim on the merits,[11] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Collando-Pena is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, this claim is without merit. The Eleventh Circuit has explained:

> Although an ineffective-assistance-of-counsel claim is a *federal* constitutional claim, which we consider in light of the clearly established rules of <u>Strickland</u>, when "the validity of the claim that [counsel] failed to assert is clearly a question of *state* law, ... we must defer to the state's construction of its own law." <u>Alvord v. Wainwright</u>, 725 F.2d 1282, 1291 (11th Cir.1984) (affording deference to state court's decision "to the extent it decide[d] the validity of [the petitioner's] underlying state law claims") (emphasis added) (superseded on other grounds); <u>see also</u> <u>Callahan v. Campbell</u>, 427 F.3d 897, 932 (11th Cir. 2005) (holding that "[i]t is a fundamental principle that state courts are the final arbiters of state law, federal habeas courts should not second-guess them ..." (quotation and omitted)). Put another way, "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." <u>McCullough v. Singletary</u>, 967 F.2d 530, 535 (11th Cir.1992); <u>Hunt v. Tucker</u>, 93 F.3d 735, 737 (11th Cir.1996) (federal courts entertaining petitions for writs of habeas corpus must follow the state court's interpretation of a state law absent a constitutional violation).

---

[11] In accordance with <u>Wilson</u>, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. <u>Wilson</u>, 138 S. Ct. at 1194.

<u>Will v. Sec'y For Dep't of Corr.</u>, 278 F. App'x 902, 908 (11th Cir. 2008) (emphasis in original). Here, the state circuit court determined Everle's testimony would have been inadmissible hearsay; therefore, the Court is bound by the circuit court's interpretation of Florida law. <u>See id.</u> Accordingly, as Everle's testimony would have been inadmissible, counsel cannot be deemed deficient for failing to present inadmissible evidence. <u>See</u> <u>Diaz</u>, 402 F.3d at 1142; <u>Bolender</u>, 16 F.3d at 1573. It follows then that submission of Collando-Pena's phone records would not have had a reasonable probability of affecting the outcome of the trial where those records would have only provided evidence that a call took place and would not have been supported by testimony or evidence as to the content of those calls. In light of three eye-witnesses, two of which who positively identified Collando-Pena as the attacker, the evidence of the immediate 911 call, and Collando-Pena's confession to a fellow inmate, evidence of Collando-Pena's phone records would not have changed the outcome of the trial. Collando-Pena has failed to demonstrate either deficient performance or prejudice; therefore, relief on his claim in Ground Three is due to be denied.

### D. Ground Four

Collando-Pena asserts that his counsel was ineffective for failing to obtain his cellphone records and global positioning history. Petition at 10-11. The State asserted the incident occurred between 10:30 p.m. and midnight on October 31, 2011; however, Collando-Pena maintains that he was at home during that time period because he was on probation. <u>Id.</u> at 10. Had counsel obtained these records, Collando-Pena claims that the jury would have learned he was on his cellphone with Laura Strada when the crime

allegedly occurred and that his global positioning data would have reflected that he was inside his apartment at the time of the incident. Id. at 11.

Collando-Pena raised this same claim as ground four of his Rule 3.850 Motion. Resp. Ex. 14 at 15-16. In denying this claim, the circuit court explained:

> As stated above, Ms. Hoffer, Ms. Rossman, and Ms. Sleeper testified Defendant burst through Ms. Hoffer and Ms. Rossman's front door, uninvited, and pointed a gun at Ms. Rossman's head. Immediately after this incident occurred, Ms. Rossman called 911. The 911 call was played to the jury. Further, Hector Sanchez-Andujar (Mr. Sanchez) testified he lived in the same jail dormitory as Defendant after Defendant was arrested for the instant case. Mr. Sanchez stated he became friends with Defendant. According to Mr. Sanchez, Defendant discussed details about Defendant's case with Mr. Sanchez. Defendant told Mr. Sanchez he was arrested for "attempt to homicide" and that Defendant committed the crime. Defendant told Mr. Sanchez he used a gun during the crime and explained to Mr. Sanchez where the crime occurred. Defendant also explained to Mr. Sanchez how he committed the crime. Based on the testimony of three eyewitness[es] combined with Defendant's confession to Mr. Sanchez, Defendant cannot show how cell phone and "global positioning" records would refute the overwhelming evidence of guilt. Accordingly, Ground Four is denied.

Id. at 34-35 (record citations omitted). The First DCA per curiam affirmed the circuit court's denial. Resp. Ex. 17.

To the extent that the First DCA decided the claim on the merits,[12] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established

---

[12] In accordance with Wilson, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. Wilson, 138 S. Ct. at 1194.

federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Collando-Pena is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, Collando-Pena's claim in Ground Four is without merit because he cannot demonstrate prejudice. The Court finds there is no reasonable probability the outcome of the trial would have been different had counsel obtained cellphone records and global positioning records in light of the substantial evidence of Collando-Pena's guilt presented at trial. As mentioned above, three eye-witnesses testified as to the attack, with two of the witnesses specifically and unequivocally identifying Collando-Pena as the suspect. Resp. Ex. 3 at 240-45, 269-306, 333-37. The State played the victim's 911 call at trial, which corroborated the three eye-witnesses' testimony. Id. at 298-303. What is most damning, however, is Collando-Pena's confession to a fellow inmate, Sanchez, in which he detailed his role in the crime. Id. at 348-54. Additionally, Collando-Pena has not provided the Court with any evidence concerning his cellphone and global positioning records; instead, he alleges in a conclusory and speculative manner that these records would have proven he was not at the victim's apartment.[13] However, such allegations cannot support an ineffective assistance of counsel claim. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) (holding that conclusory allegations of

_____

[13] Notably, Collando-Pena's cellphone and global positioning records would show only where his cellphone was located, not necessarily where he was located.

ineffective assistance of counsel are insufficient to merit habeas relief). Accordingly, Collando-Pena's unsupported claims concerning these records, when viewed in light of the competent, substantial evidence presented at trial, do not demonstrate prejudice within the meaning of <u>Strickland</u>. As such the relief he seeks in Ground Four is due to be denied.

### E. Ground Five

In Ground Five, Collando-Pena argues that his counsel was ineffective for failing to obtain Lamont Pierce and Isaiah Davis as defense witnesses. Petition at 13-14. According to Collando-Pena, both Pierce and Davis would have testified they were with Collando-Pena at his apartment during the time frame in which the incident occurred. <u>Id.</u> at 13.

In his Rule 3.850 Motion, Collando-Pena raised a similar claim. Resp. Ex. 14 at 16-17. The circuit court denied relief on the claim and explained:

> Again, as stated *supra*, the State presented an overwhelming amount of evidence implicating Defendant in this crime. Ms. Rossman testified she dated Defendant from March to April of 2011, but the two broke up. Ms. Hoffer and Ms. Rossman lived together in October of 2011. Ms. Rossman testified that two weeks before Halloween she had a "get-together" at her and Ms. Hoffer's apartment. Defendant attended the "get-together." During the party, Ms. Hoffer consumed a large amount of alcohol and ended up going to her room to sleep. Subsequently, Ms. Rossman stated the party ended and she asked Defendant to leave, but he refused. Ms. Rossman and Defendant engaged in a physical altercation before Ms. Rossman went to a neighbor's house to get help. When Ms. Rossman returned to her apartment, she found Defendant raping Ms. Hoffer. Ms. Hoffer asked Ms. Rossman not to call the police.
>
> On Halloween, the night the instant offenses occurred, Ms. Rossman and Ms. Hoffer were at their apartment with their friend, Ms. Sleeper. Ms. Rossman, Ms. Hoffer, and Ms.

Sleeper testified Defendant burst through Ms. Hoffer and Ms. Rossman's front door, uninvited, and pointed a gun at Ms. Rossman's head. Ms. Rossman and Ms. Hoffer identified Defendant as the individual who committed the offense. The only reason Ms. Sleeper could not identify Defendant is because of her viewpoint, explaining she could not have identified her own father from the perspective she had when Defendant burst through the door.

Mr. Sanchez, Defendant's fellow jail-mate, testified Defendant confessed to committing the crime, reiterating in-depth details only Defendant would know. Further, once Mr. Sanchez was listed as a State witness, Tyrone Gantt (Mr. Gantt), testified Defendant attacked Mr. Sanchez in the jail, threatened to kill him, and called him a snitch.

Considering the overwhelming amount of incriminating evidence presented to the jury, Defendant cannot show he was prejudiced by counsel's alleged deficient performance. Defendant raped Ms. Hoffer two weeks before committing the instant crime. Ms. Rossman caught Defendant raping Ms. Hoffer, thus, Defendant had motivation to attempt to kill Ms. Rossman. Ms. Hoffer and Ms. Rossman identified Defendant as the person who committed the instant offenses. Defendant then confessed to Mr. Sanchez, and Mr. Sanchez's testimony was supported by evidence of Defendant's retaliation. Compelling evidence established Defendant's guilt of Attempted First Degree Murder and Armed Burglary, and the jury undoubtedly relied on this evidence in forming its verdict. Accordingly, the record conclusively refutes any claim that Defendant was prejudiced by the absence of testimony from these witnesses that Defendant was "giving out candy to the kids when they came by for Halloween" when the offense occurred. See Pardo v. State, 941 So. 2d 1057, 1065 (Fla. 2006). Ground Five is denied.

Id. at 35-36 (record citations omitted). The First DCA per curiam affirmed the circuit court's

denial. Resp. Ex. 17.

To the extent that the First DCA decided the claim on the merits,[14] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Collando-Pena is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim in Ground Five is without merit. Collando-Pena cannot demonstrate prejudice. Collando-Pena's confession to Sanchez while in jail is a daunting evidentiary hurdle to clear to establish prejudice under Strickland. Sanchez provided specific information about the case that only Collando-Pena could have known, especially considering Sanchez testified he did not review any of Collando-Pena's discovery or legal documents and his ability to speak and read English was extremely limited. Resp. Ex. 3 at 348-53, 356-58. Sanchez's testimony coupled with the eye-witness testimony provided at trial, demonstrates to the Court that there is no reasonable probability the outcome of the trial would have been different had these witnesses testified at trial in the manner Collando-Pena asserts. Moreover, other than Collando-Pena's conclusory and self-serving allegations, he has failed to provide the Court affidavits, declarations, or other evidence regarding the nature of the testimony these witnesses would provide. Such

---

[14] In accordance with Wilson, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. Wilson, 138 S. Ct. at 1194.

conclusory and speculative allegations do not support a claim of ineffective assistance of counsel. See Tejada, 941 F.2d at 1559; Wilson, 962 F.2d at 998. Accordingly, as he cannot demonstrate prejudice, his ineffective assistance of counsel claim in Ground Five is due to be denied.

## F. Ground Six

Collando-Pena contends that his trial counsel was ineffective because she failed to call Officer Pavone, a Duval County jail correctional officer, as a witness. Petition at 14-16. Hector Sanchez, a jailhouse informant who testified at trial that Collando-Pena confessed to him, also testified in his deposition that he never reviewed any of Collando-Pena's discovery or case-related paperwork. Id. at 14. Collando-Pena maintains this was a lie and that he let Sanchez review his discovery because Sanchez told him he was a jailhouse law clerk. Id. According to Collando-Pena, "he had Officer Pavone . . . pull all of his legal documents out of property for Sanchez to look over them." Id. Accordingly, Collando-Pena asserts that his counsel should have called Pavone as a witness to testify that Collando-Pena's legal documents were not "in the property storage room while Sanchez was housed in the same jail pod as him." Id. at 15. Collando-Pena claims such testimony would have hurt the credibility of Sanchez and resulted in an acquittal at trial. Id. at 16.

Collando-Pena raised a similar claim in his Rule 3.850 Motion. Resp. Ex. 14 at 17-19. In denying relief on this claim, the circuit court stated:

> This Court finds this Ground to be wholly without merit. Assuming the "property log sheet" shows Defendant's legal documents were not in the property room at the time Defendant was living with Sanchez, this alone does not prove Defendant did not confess to Sanchez. Further, this witness would not negate the eye witness testimony of Ms. Rossman,

> Ms. Hoffer, and Ms. Sleeper. Accordingly, Defendant cannot
> show that but for counsel's alleged failure to call Officer
> Pavone as a witness, he would have been acquitted. This
> Ground is denied.

Id. at 9 (record citations omitted). The First DCA per curiam affirmed the circuit court's

denial. Resp. Ex. 17.

To the extent that the First DCA decided the claim on the merits,[15] the Court will

address the claim in accordance with the deferential standard for federal court review of

state court adjudications. After a review of the record and the applicable law, the Court

concludes that the state court's adjudication of this claim was not contrary to clearly

established federal law, did not involve an unreasonable application of clearly established

federal law, and was not based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceedings. Thus, Collando-Pena is not

entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not

entitled to deference, the claim in Ground Six is meritless. Even assuming Pavone would

testify that Collando-Pena's legal materials were not in storage at the time he and

Sanchez were housed in the same dormitory, this evidence does not dispute Sanchez's

testimony that he did not review Collando-Pena's discovery. The fact that his legal

documents may not have been in the property room does not mean that the documents

were actually shown to Sanchez. Moreover, even if Pavone's testimony would have

refuted Sanchez's testimony, it would not have changed the outcome of the trial because

the testimony of the three eye-witnesses overwhelmingly established his guilt as to both

---

[15] In accordance with Wilson, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. Wilson, 138 S. Ct. at 1194.

offenses. As such, Collando-Pena cannot demonstrate prejudice and relief on his claim in Ground Six is due to be denied.

### G. Ground Seven

As Ground Seven, Collando-Pena avers that his counsel was ineffective because she failed to object to <u>Williams</u> rule evidence becoming a feature of the trial. Petition at 16-18. The circuit court allowed evidence of Collando-Pena's alleged rape of the victim's roommate and the attempted rape of the victim, both of which occurred approximately two weeks prior to the incident, to be introduced at trial to show motive for the attempted first-degree murder charge. <u>Id.</u> at 16. However, Collando-Pena contends that "the State used the evidence to paint Petitioner as a rapist and Petitioner's trial for attempted murder and burglary, essentially became a trial for attempted murder, burglary, and rape." <u>Id.</u> at 17. Collando Pena maintains that this evidence tainted his image in the eye of the jury, which rendered the verdict unreliable. <u>Id.</u> at 18.

Collando-Pena raised a similar claim in his Rule 3.850 Motion. Resp. Ex. 14 at 20-22. In denying relief on this claim, the circuit court reasoned:

> Prior to trial, the State filed a Notice of Other Crimes, Wrongs or Acts Evidence seeking to introduce evidence that Defendant attempted to rape Ms. Rossman and Ms. Hoffer two weeks prior to the instant offenses occurred [sic]. The State sought to admit this evidence to prove motive. Subsequently, defense counsel filed a response to the State's Notice, objecting to the introduction of the evidence. One of the arguments defense counsel relied on in his objection was that the [sic] "the collateral offenses will become a feature of the trial." This Court conducted an in-depth hearing on the Notice and objection on November 30, 2012. At that hearing, counsel again argued the collateral evidence would become a feature at trial. Despite counsel's argument, this Court found the probative value of the <u>Williams</u> rule evidence outweighed the potential prejudice and denied counsel's objection to the admission of the evidence. Counsel also filed a Motion for

New Trial based on this Court's admittance of the collateral evidence and denial of Defendant's objection to such. The record shows counsel made the exact objection Defendant now alleges counsel did not make. Accordingly, this claim is without merit and Ground Seven is denied.

Id. at 37-38 (record citations omitted). The First DCA per curiam affirmed the circuit court's denial. Resp. Ex. 17.

To the extent that the First DCA decided the claim on the merits,[16] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Collando-Pena is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, there is no merit to the claim raised in Ground Seven. The record reflects that on July 20, 2012, the State filed a notice of its intent to use Williams rule evidence at trial. Resp. Ex. 1 at 30. On November 30, 2012, defense counsel filed a motion in opposition to the introduction of this evidence, id. at 33-35, in which counsel argued, in part, that the evidence should be excluded because there was a danger it would "become a feature of the trial, thereby causing undue prejudice to the defendant and deprive him of his right to a fair trial." Id. at 34. On the same day, the Court held a

---

[16] In accordance with Wilson, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. Wilson, 138 S. Ct. at 1194.

hearing on the matter. Id. at 102-46. At the hearing, counsel again objected to the introduction of the Williams Rule evidence, making the following specific arguments:

> [W]e would argue that Mr. Pena would be clearly prejudiced by allowing this evidence to come in and believe that the State would make this a feature of the trial, that the jury would simply convict Mr. Pena based on an alleged event that happened. An event that was never recorded.
>
> . . . .
>
> So we would argue that this is extremely prejudicial and it would become a feature of the trial which would prejudice Mr. Pena.
>
> . . . .
>
> While the State has said they would limit any testimony on it, I still think it would become a feature of the trial that the jury would hold against Mr. Pena to a great degree.

Id. at 139, 141, 143-44. The circuit court ultimately allowed the State to present the evidence. Id. at 144. Based on the above, the record refutes Collando-Pena's assertion that counsel failed to object that this evidence would become a feature of the trial. Therefore, he has failed to establish deficient performance.

Additionally, the trial transcripts demonstrate that the State presented the Williams rule evidence to the extent necessary to give it the proper context and did not belabor the point. Id. at 236-39, 289-95, 352-53. Accordingly, contrary to Collando-Pena's contention otherwise, the Williams rule evidence did not become a feature of the trial. Moreover, as noted above, the State introduced overwhelming evidence of Collando-Pena's guilt; therefore, the Court concludes there is no reasonable probability the outcome of the trial would have been different had the Williams rule evidence not even been introduced. In

light of the above analysis, relief on Collando-Pena's claim in Ground Seven is due to be denied.

## H. Ground Eight

Collando-Pena asserts that his trial counsel was ineffective for misadvising him to not testify at trial. Petition at 19-21. According to Collando-Pena, he wanted to testify that: (1) he was at home during the time period of the incident with three of his friends handing out Halloween candy; (2) he was talking to Laura Strada on the telephone during this time as well; (3) he was on probation and not allowed to leave his home; (4) his probation officer visited his home the next day and searched his home and vehicle; (5) while his probation officer was there Collando-Pena received a phone call from the victim during which she discussed framing Collando-Pena for the crime; and (6) Sanchez reviewed all of Collando-Pena's legal documents prior to trial. Id. at 19-20. However, Collando-Pena contends that his counsel advised him not to testify because his story was not credible and that the jury would not believe him because he was a previously convicted felon. Id. at 20. Additionally, Collando-Pena states his attorney told him she would be able to elicit this same information through cross-examination; thus, his testimony was not needed. Id. Collando-Pena maintains that both his counsel and the circuit court misadvised him about the role his prior convictions would play if he testified, and, but for this alleged misadvice, he claims he would have testified and the outcome of the trial would have been different. Id. at 21.

Collando-Pena raised a similar claim in his Rule 3.850 Motion. Resp. Ex. 14 at 24, 26.[17] The circuit court denied this claim, stating in pertinent part:

> The court must address two factors when determining whether counsel was deficient in advising a defendant not to testify: (1) whether the defendant voluntarily agreed with counsel not to take the stand; (2) whether counsel's advice to the defendant, even if voluntarily followed, was nevertheless deficient because no reasonable attorney would have discouraged the defendant from testifying. Simon v. State, 47 So. 3d 883, 885 (Fla. 3d DCA 2010) (citing Lott v. State, 931 So. 2d 807, 819 (Fla. 2006)).

> During trial, this Court conducted a colloquy with Defendant regarding his right to testify. This Court explained Defendant had an absolute right to remain silent or an absolute right to testify. This Court advised Defendant that if he testified, he risked allowing the jury to hear about any prior felony convictions. Defendant then stated he weighed all those considerations when deciding not to testify. This Court heeded Defendant's position but advised him he had the right to change his mind prior to the jury charge. Based on this testimony, this Court finds Defendant voluntarily waived his right to testify.

> Further, this Court finds counsel was not deficient in advising Defendant not to testify. In his own Motion, Defendant admits he was on probation at the time the offenses were committed. According to Defendant's scoresheet, Defendant has a prior felony conviction for Carrying a Concealed Firearm. In an effort to protect Defendant's credibility, counsel advised Defendant not to testify and instead attacked the State's witnesses through cross examination. Counsel attempted to question Sanchez's knowledge of Defendant's case by asking Sanchez if he got information on Defendant's case by reviewing discovery papers and documents from Defendant's attorney, to which Sanchez replied "no." Further, counsel attempted to test Ms. Rossman's credibility on cross examination by impeaching her with prior inconsistent testimony. As discussed supra, an overwhelming amount of incriminating evidence was presented during trial. Defendant voluntarily exercised his

---

[17] Page twenty-five of the Rule 3.850 Motion is not contained in the exhibits attached to the Response.

> right to remain silent and counsel was reasonable in advising
> Defendant not to testify as the jury would have learned of
> Defendant's prior record and probationary status at the time
> of the offense. Accordingly, Ground Nine is denied.

Id. at 40-41 (record citations omitted). The First DCA per curiam affirmed the circuit court's

denial. Resp. Ex. 17.

To the extent that the First DCA decided the claim on the merits,[18] the Court will

address the claim in accordance with the deferential standard for federal court review of

state court adjudications. After a review of the record and the applicable law, the Court

concludes that the state court's adjudication of this claim was not contrary to clearly

established federal law, did not involve an unreasonable application of clearly established

federal law, and was not based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceedings. Thus, Collando-Pena is not

entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not

entitled to deference, the claim in Ground Eight is meritless. The Eleventh Circuit has

explained:

> It is by now abundantly clear that a criminal defendant
> has a fundamental right to testify on his own behalf at trial.
> Rock v. Arkansas, 483 U.S. 44, 52, 107 S.Ct. 2704, 97
> L.Ed.2d 37 (1987); United States v. Teague, 953 F.2d 1525,
> 1532 (11th Cir.1992) (en banc). That right "cannot be waived
> either by the trial court or by defense counsel," and a "criminal
> defendant cannot be compelled to remain silent by defense
> counsel." Teague, 953 F.2d at 1532. . . .
>
> . . . .

---

[18] In accordance with Wilson, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. Wilson, 138 S. Ct. at 1194.

. . . "Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide." <u>Teague</u>, 953 F.2d at 1533. . . .

. . . We have recognized that "[t]he testimony of a criminal defendant at his own trial is unique and inherently significant" because, "[w]hen the defendant testifies, the jury is given an opportunity to observe his demeanor and to judge his credibility firsthand." <u>Nichols v. Butler</u>, 953 F.2d 1550, 1553-54 (11th Cir.1992). The defendant's testimony is of "prime importance" when "the very point of a trial is to determine whether an individual was involved in criminal activity." <u>Id.</u> at 1554 (internal quotation marks omitted).

<u>Nejad v. Attorney General, State of Georgia</u>, 830 F.3d 1280, 1289-90 (11th Cir. 2016).

The record reflects the following colloquy occurred at trial concerning Collando-Pena's decision to not testify:

| | |
|---|---|
| THE COURT: | All right. How does your client intend to proceed? |
| MR. ROBERTS: | Your Honor, at this time the defense does not have any witnesses that it would like to call and Mr. Pena has made the choice that he does not wish to testify. |
| THE COURT: | All right. Mr. Pena, if you'd step forward, please, so I don't have to raise my voice and risk the jury overhearing. |
| | I know your lawyer has already talked to you about this but I'm going to talk to you about it on the record. You have an absolute right to remain silent. The state has the entire burden of proving your guilt beyond a reasonable doubt as to each element, not only as to each crime but as to each element of those crimes. |
| | You are under no obligation to present evidence or prove anything and |

36

you are certainly under no obligation to testify. However, you do have a right to testify. If you choose to testify you give up your right to remain silent and you subject yourself to cross examination by a trained prosecutor and also risk the possibility that any felonies in your background, and I don't know about that because I don't have your record in front of me, but if you do have felonies in your background or other crimes of dishonesty those will be brought out and placed before the jury.

I suspect that all of those factors were considered by you and weighed in your decision not to testify, is that correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. If you change your mind before I bring the jurors back in let me know and I'll be glad to reinquire and let you take the stand if that's what you want to do. Do you understand that, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: As a matter of fact, even after the jurors return if you change your mind let your lawyer know and I'll do what needs to be done in order to see that happens. Otherwise I'll conclude that your decision remains unchanged, all right?

THE DEFENDANT: Yes, Your Honor.

Resp. Ex. 3 at 381-83.

Concerning Collando-Pena's claim that counsel advised him not to testify because the jury would not find him credible, Collando-Pena admits he was on probation at the time of the incident and was a convicted felon. In light of these facts, Collando-Pena's

credibility was an issue and, therefore, it was reasonable for his attorney to advise him against testifying. See Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983) (noting that "[e]ven if in retrospect the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it."). As it relates to his claim that his counsel advised him that the substance of his testimony would have been able to be brought out on cross-examination, Collando-Pena sat through the entire trial and heard all the cross-examination testimony. Accordingly, he would have known the evidence against him and the lack of evidence in support of his claims prior to making his decision to not testify. As such, the Court finds his claim that counsel's statement on this matter influenced his decision not to testify is not credible, because he was fully aware of the evidence, or lack thereof, presented at trial before waiving his right to testify.

Lastly, as to Collando-Pena's assertion that both his counsel and the circuit court failed to adequately advise him of the role his prior convictions would play if he testified, he cannot demonstrate prejudice. Although the circuit court's explanation of the role of his prior felonies during the colloquy was ambiguous on this matter, he was still made aware generally that the jury would know he was a convicted felon. Additionally, the content of the testimony Collando-Pena claims he would have provided reveals that he would have freely and voluntarily discussed his criminal past because he thought his probation status would be helpful to his defense. In light of the content of his proposed testimony, the Court concludes that counsel's alleged misadvice and the circuit court's ambiguous explanation did not play a substantial role in his decision not to testify. Moreover, even if Collando-Pena testified at trial, the Court finds there is no reasonable

probability the outcome of the trial would have been different in light of the substantial evidence of his guilt presented to the jury. Moreover, as stated above, Collando-Pena faced a serious credibility issue while the other witnesses did not. Accordingly, there is no reasonable probability his testimony would have changed the outcome of the trial, and, therefore, his claim in Ground Eight is due to be denied.

## I. Ground Nine

Lastly, Collando-Pena contends that the cumulative effect of counsel's alleged deficiencies prejudiced him. Petition at 22. Collando-Pena raised this claim in his Rule 3.850 Motion. Resp. Ex. 14 at 27. The circuit court denied this claim of cumulative error, explaining:

> In Ground Ten, Defendant avers that the cumulative effect of Defendant's errors denied him effective assistance of counsel. "Where individual claims of error alleged are either procedurally barred or without merit, a claim of cumulative error must fail." Griffin v. State, 866 So. 2d 1, 22 (Fla. 2003). Defendant's individual claims are without merit. Accordingly, Defendant is not entitled to relief.

Id. at 41. The First DCA per curiam affirmed the circuit court's denial. Resp. Ex. 17.

To the extent that the First DCA decided the claim on the merits,[19] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of

---

[19] In accordance with Wilson, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. Wilson, 138 S. Ct. at 1194.

the evidence presented in the state court proceedings. Thus, Collando-Pena is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim Collando-Pena raises in Ground Nine is without merit. Where all individual claims are meritless, the claim of cumulative error is also without merit. Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012). As explained above, each of Collando-Pena's claims raised in his Petition are meritless. Therefore, his claim of cumulative error is likewise without merit. Accordingly, relief on his claim in Ground Nine is due to be denied.

## VII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If Collando-Pena seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Collando-Pena "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Collando-Pena appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 5th day of April, 2019.

MARCIA MORALES HOWARD
United States District Judge

Jax-8

C:    Wilman Collando-Pena, #J44664
       Bryan G. Jordan, Esq.